IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ZACHARY HEDDY                                                                                          PLAINTIFF
#150777

V.                                        Case No. 3:24-CV-00239-JM-BBM

SHANE RUSSELL, Sheriff, Sharp County;
EDITH ELLIOT, Jail Administrator, Sharp
County; and JESSICA HESS, Sergeant,
Sharp County Sheriff's Office                                                                       DEFENDANTS

## ORDER

### I.    INTRODUCTION

On December 23, 2024, Plaintiff Zachary Heddy ("Heddy"), a pretrial detainee housed at the Sharp County Detention Facility ("SCDF"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants—Sheriff Shane Russell ("Russell"), Jail Administrator Edith Elliot ("Elliot"), and Sergeant Jessica Hess ("Hess")—violated his constitutional rights. (Doc. 2). Before Heddy may proceed with this action, the Court must screen his claims in accordance with the Prison Litigation Reform Act ("PLRA").[1] 28 U.S.C. § 1915A(a).

---

[1] The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

## II.    ALLEGATIONS[2]

During the week of Thanksgiving 2024, while housed at the SCDF, Heddy had a seizure and fell off his top bunk. (Doc. 2 at 4). When he fell, Heddy hit his head on the sink and toilet and vomited for 15 to 20 minutes. *Id.* Some inmates who heard a loud thump, including inmate Eddy Wilson ("Wilson"), rolled Heddy over to his side and onto a blanket. *Id.* The inmates asked for help, and jail guards named Ashley and Tyler, who are not named as parties to this action, came to the cell. *Id.* While Heddy was still seizing, Tyler said, "he be okay." *Id.* According to Heddy, Wilson shouted that Heddy needed medical attention "now," and the inmates were doing more to help save his life than the guards. *Id.*

Someone ordered Wilson to drag Heddy on a blanket out of the cell and closer to the front of the booking/holding area. (Doc. 2 at 4). Once there, Heddy was placed in a "one man holding cell" while experiencing another seizure. *Id.* Heddy was alone while he waited for Hess to approve medical help. *Id.* The EMTs arrived and asked Heddy when this started, and, according to Heddy, the EMTs were "upset that they waited 40 mins to make the call for EMT assistance." (Doc. 2 at 5).

Heddy attaches to his Complaint medical records from the White River Medical Center from a December 1, 2024 visit to the emergency room. The reason for the visit was "head trauma[.]" (Doc. 2 at 7). According to the medical records, Heddy was instructed to: (1) return to the ER for worsening of symptoms, bowel, or bladder changes; and (2) follow-

---

[2] Any capitalization, spelling, or grammatical errors from direct quotes are corrected internally and without brackets.

up with his primary provider at the earliest availability. *Id*. He was referred to two free-world clinics for follow-up care. *Id*. Another page lists the reason for the emergency-room visit as, "fall hit head altered loc[.]" *Id.* at 8.

On December 15, 2024, Heddy had another seizure while "on the top floor of the pod[.]" (Doc. 2 at 5). Heddy alleges that the top floor was a security risk due to prior "episodes of my condition." *Id.* As before, the inmates called for help, and the inmates informed Heddy that he had two to three violent seizures and "then another" before they dragged him out to the front on a blanket. *Id.* Heddy was kept in a booking cell "for three days without calling a doctor or EMTs" to check on him. *Id.* Heddy alleges that "they" followed protocol up to that point but "left him on the floor for two days" until he regained consciousness on the third day. *Id.* According to Heddy, no nurse or doctor was on site, and no one was called to make sure his condition did not deteriorate. *Id.* Heddy also mentions they stopped giving him his medication and alleges that he fears for his life, health, and well-being. *Id.* He further alleges that the SCDF does not have a doctor or nurse on call for twelve hours of the day, "as the state requires," because "they" only come in once a week. *Id.*

Heddy sues Defendants in their official and individual capacities. (Doc. 2 at 2). He seeks monetary relief. *Id.* at 5.

### III.  INITIAL SCREENING

To survive pre-service screening under the PLRA, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," a

3

"formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Id*. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, "[a] pro se complaint must be liberally construed," and courts "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (cleaned up; citations omitted); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted).

The Court interprets Heddy's Complaint as raising medical-deliberate-indifference claims. However, as pleaded, Heddy fails to allege any plausible claim against the named Defendants.

    **A.**    **No Personal Action by Russell or Elliot**

Heddy's Complaint fails to state a claim against Sheriff Russell or Jail Administrator Elliot. In § 1983 actions, government officials are only liable for their "*own individual actions.*" *Iqbal,* 556 U.S. at 676 (emphasis added). Heddy, however, does not allege that Russell and Elliot were directly involved in any constitutional violation. Instead, Heddy asserts that the SCDF generally fails to provide proper medical care. (Doc. 2 at 4–5). Without any facts regarding actions taken directly by Russell or Elliot, the Court is

unable to determine if they violated Heddy's constitutional rights. Thus, as pleaded, Heddy fails to state any plausible claim against Russell or Elliot.

### B. Deliberate Indifference to Serious Medical Needs

Heddy's Complaint also fails to state a claim against any named Defendant for medical deliberate indifference. Deliberate indifference is a high threshold that goes well beyond negligence or gross negligence. *Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023); *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). To establish deliberate indifference for an inadequate-medical-care claim, Heddy must allege facts showing: (1) he had an objectively serious medical need; and (2) the defendants knew of but deliberately disregarded that need. *De Rossitte v. Correct Care Sols., LLC*., 22 F.4th 796, 802 (8th Cir. 2022); *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021). Deliberate indifference can be shown in a variety of ways, including "a defendant's decision to take an easier and less efficacious course of treatment," an intentional delay or denial of access to medical care; "[m]edical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care;" or intentional interference with a prescribed treatment. *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (citations omitted); *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

<u>First Seizure</u>. The Court notes that Heddy's only allegation of personal conduct by any named Defendant is that Heddy had to wait for Hess to approve medical help during his first seizure episode. (Doc. 2 at 4). Heddy also mentions that the EMTs were upset because "they" waited forty minutes to call for medical care. *Id.* at 5. As presented, the single allegation against Hess fails to show that Hess was deliberately indifferent to

Heddy's serious medical needs. Moreover, the EMTs mentioning that "they" should have called for medical attention earlier is too vague and ambiguous to be actionable. Lastly, Heddy alleges that two non-party guards, Tyler and Ashley, observed his seizure, but one, Tyler, said, "he be ok." *Id.* at 4. Heddy does not sue either Ashley or Tyler, however, and, even if he did sue them, Heddy fails to state a plausible medical-deliberate-indifference claim against them. All in all, as pleaded, Heddy fails to state a medical-deliberate-indifference claim against any named Defendant related to his first seizure.

Second Seizure. Heddy also generally alleges that he did not receive any care for his second seizure, he was left unconscious for two days, and his medication was stopped. (Doc. 2 at 4–5). Additionally, according to Heddy, placement on the "top floor" prior to his second seizure was a security risk. *Id.* at 5. These allegations suffer from several deficiencies. First, Heddy fails to connect any action with any named Defendant. Second, Heddy does not explain how being on the "top floor" constituted a risk to his safety. Third, Heddy does say who stopped giving him his medication. Simply put, without more facts regarding the events surrounding Heddy's second seizure, it is unclear whether any named Defendant was deliberately indifferent to Heddy's serious medical needs.

Accordingly, as pleaded, Heddy's allegations do not demonstrate that any named Defendant—including Hess—knew of an objectively serious medical need but deliberately disregarded that need. *See De Rossitte*, 22 F.4th at 802.

### C.  Official-Capacity Claims

Heddy also sues Defendants in their official capacities, which "must be treated as a suit against the County." *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018). Sharp

6

County cannot be held vicariously liable for constitutional violations committed by its employees. *See id*. Instead, Sharp County can only be held liable if the constitutional violation resulted from: "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019); *Corwin v. City of Independence, MO.*, 829 F.3d 695, 699 (8th Cir. 2016). While Heddy mentions that SCDF only has a doctor come in one day a week and does not have medical staff on site twelve hours a day, "as the state requires," Heddy's Complaint lacks any additional information about an alleged policy of Sharp County or how any constitutional violation alleged by Heddy resulted from a Sharp County policy. Accordingly, as pleaded, Heddy does not state any plausible official-capacity claim against any of the named Defendants.

## IV.     OPPORTUNITY TO AMEND

The Court will allow Heddy thirty (30) days from the date of this Order to file an amended complaint to correct the deficiencies in his current pleading. Any amended complaint must list the Defendants that Heddy believes were *personally involved* in violating his constitutional rights and explain *how* those Defendants were personally involved. If Heddy seeks to state an official-capacity claim, he must state his basis for doing so.

Heddy is placed on notice that, if he files an Amended Complaint, that pleading will supersede his previous Complaint. *See In re Atlas Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Accordingly, his Amended Complaint should contain *all Defendants* he seeks to name in this matter, *all claims* he seeks to pursue in this action, and *the factual predicate*

for all claims against all Defendants. If Heddy elects not to file an Amended Complaint, the Court will proceed to screen his December 23, 2024 Complaint, (Doc. 2).

## V.   CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. The Clerk is directed to mail Heddy a § 1983 complaint form that is labeled "Amended Complaint."

2. Heddy will be allowed to file, **within thirty (30) days** of the date of this Order, an Amended Complaint containing the facts described in this Order, which are necessary to support his claims. If he elects not to file a timely Amended Complaint, the Court will screen his original Complaint, (Doc. 2).

DATED this 6th day of October, 2025.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE